THE PROVIDENT BANK, APPELLANT, *v.* WOOD ET AL., BOARD OF COUNTY COMMISSIONERS OF HAMILTON COUNTY, APPELLEES.

(No. 73-255—Decided December 5, 1973.)

*Messrs. Keating, Muething & Klekamp, Mr. Louis F. Gilligan* and *Mr. Gary P. Kreider,* for appellant.

*Mr. Simon L. Leis, Jr.,* prosecuting attorney, and *Mr. Arthur M. Ney,* for appellee.

PAUL W. BROWN, J.  In this case, the court is asked to determine whether the term of the award of interim funds was for the entire two-year designation period, or whether the term of the award was limited to the six-months term of the instrument evidencing the deposit executed subsequent to that award. Stated another way, we must decide whether the term of the award of the interim deposit must be for "not less than thirty days nor more than one year," the minimum and maximum maturities decreed by R. C. 135.09 for deposits of interim funds.

For the reasons set forth below, we find that the term, "interim deposit," necessarily relates to the periodic offer of interim moneys by a political subdivision to a bank for deposit; that R. C. 135.09 limits the term of an "award" of interim moneys to a minimum of thirty days and a maximum of one year; and that Provident was correct in maintaining that R. C. 135.14(C) granted it the right to refuse to renew or re-issue the certificate of deposit which matured on February 20, 1972. Accordingly, the judgment of the Court of Appeals must be reversed.

R. C. Chapter 135 governs the investment of public moneys held by the state and its political subdivisions. The Act designates three types of deposits which can be made. "Interim deposits," the type involved in the instant case, are defined in R. C. 135.01(F) as deposits of:

"* * * public moneys in the treasury of the state or any subdivision after the award of inactive deposits has been made * * *, which moneys are in excess of the aggregate amount of the inactive deposits as estimated by the governing board prior to the period of designation and which the treasurer or governing board finds should not be deposited as active or inactive deposits for the reason that such moneys will not be needed for immediate use but will be needed before the end of the period of designation."

Once it has been determined that interim moneys exist, the statutory process for the deposit of those moneys is triggered, culminating in the actual deposit pursuant to R. C. 135.09 and 135.14. The issue before us centers on the meaning of the statutory language at the final stage of the deposit process, particularly R. C. 135.14(C), as it relates to the right of an eligible institution to refuse to accept an interim deposit following an award of interim moneys.

It is the contention of Provident that such an award occurs when the treasurer or governing board of the political subdivision makes the decision to place an interim deposit with a designated depository. Provident contends that the boards's attempt to renew the certificate of deposit

which matured on February 20, 1972, was a second "award" of interim moneys for deposit, and that, at that time, it had a right to refuse to accept the deposit.

At this juncture, we turn our attention to the Agreement for the "Deposit of Interim Moneys" entered into by the parties on August 20, 1971, on which the board relies so heavily. Parenthetically, we note that such a written agreement is not required by R. C. 135.09. Following the statutory guide for the handling of interim moneys, it is to be noted that the award of moneys must be made subsequent to the designation of a depository—the award preceding the deposit. The board takes the position that the August 20, 1971, Agreement controls the present case by reciting in its terms an award to Provident of $23,000,000 for a term of two years. Upon closer inspection, however, it is clear that that Agreement does no such thing. The only effect of that document, beyond detailing the collateral to be put up by the bank for the deposit, was to reduce from $35,000,000 to $23,000,000 the maximum amount of county funds which could be deposited with Provident during the two-year period beginning on August 24, 1971. The board's reliance upon the Agreement to buttress its claim of an "award" of the sum for two years is misplaced.

Turning to R. C. Chapter 135, and specifically R. C. 135.09 and 135.14(C), it becomes evident that the board made one award to Provident for six months, and that its attempt to renew the certificate of deposit was, in effect, an attempt to make a second award of the same sum.

There is no lack of general rules to guide the court in its effort to ascertain the meaning of the statutes before it. The principles of statutory construction are given exhaustive treatment in 50 Ohio Jurisprudence 2d, 129 to 310, Sections 160 to 327. It is a cardinal rule that a court must first look to the language of the statute itself to determine the legislative intent. See, e. g., *Katz* v. *Department of Liquor Control* (1957), 166 Ohio St. 229. If that inquiry reveals that the statute conveys a meaning which is clear, unequivocal and definite, at that point the interpretative

effort is at an end, and the statute must be applied accordingly. *Sears* v. *Weimer* (1944), 143 Ohio St. 312.

"Where the language itself clearly expresses the legislative intent, the courts need look no further." *Katz, supra,* at 231.

Turning to the statutory language we are asked to interpret R. C. 135.14(C), which provides that:

"* * *The award of interim deposits shall be made in accordance with Section 135.09 of the Revised Code and the treasurer or the governing board shall determine the periods for which such interim deposits are to be made and shall award such interim deposits for such periods, provided, that any eligible institution receiving an interim deposit award may, upon notification that said award has been made, decline to accept said interim deposit * * *."

The words "award" and "deposit" are central to an understanding of the statute. "Award" is defined in Black's Law Dictionary (Rev. 4 Ed.) as: "The decision or determination rendered by arbitrators or commissioners, or other private or extrajudicial deciders, upon a controversy submitted to them * * *." The same source defines "deposit" as "the act of placing or lodging money in the custody of a bank or banker * * *." Thus, the word "award," as it apears in R. C. 135.09 and 135.14(C), refers to a determination by the treasurer or governing board that interim moneys are to be placed with a particular institution and held in a particular form. The "deposit" is the physical placement of the funds, and it is that act which the recipient bank is empowered to decline pursuant to R. C. 135.14(C).

The board contends further that the period for which interim deposits are awarded is two years, pursuant to R. C. 135.12, and that the thirty-day-to-one-year instruments evidencing such deposits are merely the form dictated by R. C. 135.09. Stated another way, we are asked by the board to find that the six-month certificate involved here does not reflect a deposit complete in itself, but rather reflects the form the "deposit" of interim funds was to

assume for one-fourth of its life. We find this a strained interpretation of the statute, which we cannot accept.

Returning to R. C. 135.14(C), quoted above, and reading it in conjunction with the first sentence of R. C. 135.09, it is clear that what is contemplated is the periodic deposit of such interim funds as they become available during a two-year period. Consequently, from time to time during this two-year period of designation the treasurer or governing board may make more than one determination to place interim funds in the designated depository for particular maturity periods. Upon notification of the award, whether it be an original or subsequent award, the designated institution is granted the right to decline the deposit. This court finds this to be the right granted the financial institution by R. C. 135.14(C), and that Provident correctly interpreted the law in exercising its statutory prerogative.

It should be noted that this right to decline a deposit exactly parallels the right given the treasurer or governing board by R. C. 135.09 to request new bids for interim deposits when it feels that prevailing market interest rates so dictate, so that neither party will find itself bound in the handling of public moneys to an unrealistic rate of return due to fluctuating market forces during the two-year period of designation.

For the foregoing reasons, the judgment of the Court of Appeals is reversed.

*Judgment reversed.*

O'NEILL, C. J., HERBERT, CORRIGAN, STERN and W. BROWN, JJ., concur.

CELEBREZZE, J., dissents.